## DISTRIBUTION OF INCOME AFTER TERMINATION OF TRUST ESTATE.

Court of Appeals·for Hamilton County.

BARBOUR ET AL, TRUSTEES, v. GALLAGHER ET AL.

Decided, December 2, 1913.

*Estates—Trusts—Distribution of Income—Arising After Termination of Trust.*

Income arising after the termination of the trust under which this estate has been held follows the property and should be distributed in accordance with the provisions of the will.

*J. B. Foraker,* for Mary Swigert.
*John J. Acomb,* for estate of Laura B. Capron.
*Mallon & Vordenberg,* for Harriette C. Goodloe.
*Harmon, Colston, Goldsmith & Hoadly,* for the trustees.

JONES (Oliver B.), J.

The question here presented is on motions filed by several beneficiaries for distribution of the income from certain property held by trustees under the will of James Smith Armstrong. The will provided:

"Seventh.   All the rest, residue and remainder of my estate real, personal and mixed, whatsoever and wheresoever, I devise, give and bequeath to my executors and trustees hereinafter named, and the survivors and successors of them, in trust, nevertheless:   *   *   *
"4th.   Now as to the manner in which the income arising from my said property both real and personal shall be divided, I hereby order and direct my hereinafter named executors and trustees, and as one of the conditions of their trust to divide the

net revenue and income of my property, real, personal and mixed to them hereinbefore devised and bequeathed, in the following manner, to-wit:

"They shall divide said net income and revenue into equal parts, and pay the same semi-annually as follows: * * *

"One part to my niece Laura Capron during her natural life and after her death to any child or children of her body surviving her or to the issue of such child or children. * * *

"One part to my brother Frank W. Armstrong during his natural life and after his death to any lawful child or children of his surviving him, or to the issue of such child or children; * * *

"One part to my sister Amelia A. Mannen during her natural life and after her death to any child or children of her body surviving, or to the issue of such child or children;

"Eighth. When all my sisters, nieces, nephews and my brother Frank W. Armstrong who are hereinbefore made beneficiaries of the income and revenue arising from the real and personal property hereinbefore devised in trust shall have deceased, it is then my will that the successors of my hereinafter named executors and trustees, or said executors and trustees themselves if then living, shall proceed without delay to divide such real and personal property, or the proceeds thereof should it be found necessary to sell for cash a part or the whole of such property to carry out equitably the objects and purposes of this my last will and testament, and to divide such property or the proceeds thereof into as many equal parts as there will be then surviving children of my aforesaid nephews, nieces and of my brother Frank W. Armstrong, and to make over, transfer and give to each one of said surviving children one of said equal parts, to have and to hold the same absolutely forever."

The Supreme Court of Ohio has decided that the trust created by this will was terminated on July 17, 1911, by the death of Mrs. Capron, who was the last of the named beneficiaries. The testator having died on March 10, 1883, the executors made the first distribution of income September 10, 1883, and since that time distributions have been made regularly on the 10th of each September and March—the last of such distributions being March 10, 1911.

The question now presented to the court is whether the income accumulated between March 10, 1911, and the date of the death of Mrs. Capron, July 17, 1911, should be distributed among the beneficiaries of the income, or whether because ordinarily it would not have been payable until September 10, 1911, this income should be added to the corpus of the estate and distributed among the persons entitled thereto as provided by item eighth.

From a careful reading of the parts of the will quoted above it will be seen that the testator distinguishes clearly between the "beneficiaries of the income and revenue arising from the real and personal property hereinbefore described devised in trust," and those to whom the principal was to be distributed at the termination of the trust. Laura Capron, the last surviving named beneficiary of the income, whose death terminated the trust, was to receive one part of this income during her natural life. The provision as to the payment of that income semi-annually was evidently made for the convenience of the trustees, and could not, under the language used in the will, be construed to prevent the estate of Mrs. Capron from receiving her proportionate share of such income for the full term of her life.

Mrs. Swigert, as the daughter of Frank W. Armstrong, and Harriette A. Goodloe, as the daughter of Amelia A. Mannen, and the other beneficiaries of the income, were also entitled to receive their proportionate shares of the income during the life of the trust.

In other words, it became the duty of the trustees to collect revenue and income from the property held by them, and after deducting expenses to divide same into as many equal shares as there were then surviving beneficiaries, and instead of making division of each sum of money as it came in, the will provideu that this income should be paid semi-annually.

The trust not having been terminated upon one of these semi-annual dates, it becomes necessary to make a final division of this income on the date of the termination of the trust. Had it been practically possible to make immediate division of the corpus of the property on the day of the termination of the trust, that would have been the duty of the trustees; but as that was impossible, any income arising after the termination of the trust would follow the property and become part of the fund to be distributed under item eighth.

The rules of apportionment between life tenants and remaindermen have been ably presented by counsel and many cases cited, but in the opinion of the court it is not necessary to discuss or consider them.

The property in the hands of the trustees consisted of real estate, railway, street railway, gas and water company stocks, and municipal and railroad bonds. Dividends on these stocks not yet declared would of course not be apportionable, but those declared and collected would be already income in the hands of the trustees and would be apportionable as such. The interest on the bonds and the rentals of the real estate would become due day by day, and would be apportionable. It has been argued, however, that as the title to the property itself was in the trustees the distribution of income to the beneficiaries was in the nature of an annuity and therefore rules of the common law forbidding the apportionment of annuities apply, and that no part of the income accumulating after the last semi-annual distribution could be distributed to the beneficiaries of the income. We can not agree that a proportionate share of this income constitutes an annuity.

Taking, however, the rules of apportionment as they existed under the common law and as modified later by the statutes and decisions, if they were applied to the determination of the question of division of the property in the hands of the trustees, we are of the opinion that it would result in the same division that

we have found necessary to carry out the intention of the testator as expressed in the will.

It is therefore ordered that the trustees make the apportionment of the income to the beneficiaries entitled thereto as stated above.

Judgment accordingly.

SWING, J., and JONES (E. H.), J., concur.